| GREMILLION, Judge.
The defendant, Joyce Green, appeals the trial court’s judgment dismissing her motion seeking the release of money seized from her home due to the State of Louisiana’s failure to timely institute forfeiture proceedings as required by La.R.S. 40:2608(1). We affirm.
FACTS
On June 13, 1997, the Rapides Parish Metro Narcotics Task Force executed a search warrant at Green’s residence at 3404 Baldwin Avenue in Alexandria. As a result of the search, crack cocaine and a large amount of money were seized from the residence, and Green’s son was arrested. Later that day, the district attorney’s office served a Notice of Pending Forfeiture upon her son at her residence con *860 cerning $9,948.00 seized during the search. The notice stated that Green should comply with the requirements of La.R.S. 40:2610 in order to preserve 12her rights to the money seized.
On June 24, 1997, Green filed a Motion and Order to Show Cause and Clarification with the Rapides Parish Clerk of Court. In the motion, she stated that $22,300.00 was seized from her home, but that the notice from the district attorney's office only listed $9,948.00. She asked that Metro Narcotics be ordered to clarify and correct the amount of currency seized. Attached to this motion was a document entitled “Claim,” which complied with La. R.S. 40:2610(B). The motion requested that service of the documents be made on the Rapides Parish District Attorney and Metro Narcotics.
On July 18, 1997, the district attorney’s office filed several applications seeking the forfeiture of seized monies since more than thirty days had elapsed since it filed its Notice of Pending Forfeiture without a claim filed contesting the forfeiture pursuant to La.R.S. 40:2610. Although not a part of the record, Stanley Goodwin, the assistant district attorney handling the forfeitures, testified that judgments were rendered ordering the various sums forfeited.
On November 19, 1997, Green filed a Motion to Release Seized Property Because State has Failed to Timely Institute Forfeiture Proceedings as Mandated by La.R.S. 40:2608(1). In her motion, Green stated that she had mailed a claim to the district attorney’s office and Metro Narcotics, both by certified mail, within thirty days after receiving the Notice of Pending Forfeiture. Since the State failed to file a formal Petition for Forfeiture within ninety days of receiving her claim, she argued that the money should be released to her.
|3A hearing on the motion was held on January 28, 1998. The parties stipulated that the money contested was seized on June 13, 1997, by officers of the Metro Narcotics unit, and that the Notice of Pending Forfeiture was received by Green that same day. Since Green was not present to testify, the hearing was continued until February 6, 1998. Following that hearing, the trial court took the matter under advisement and requested post-trial memoranda.
On February 9, 1998, the district attorney filed a Motion to Suspend Briefing and Stay Proceedings, alleging the discovery of fraudulent evidence presented by Green in support of her motion. The State asked the trial court to suspend all briefing and to stay the proceedings pending further investigation and hearings. This order was granted that same date. On February 24, 1998, the State filed a Motion to Reopen the evidence in the matter. A hearing was set on this motion for March 23, 1998. On February 26,1998, Green filed a Motion and Order to Vacate Ex Parte Order Suspending Briefing and Staying Proceedings, arguing that the State’s only remedy was a motion for a new trial since the matter had already been tried in its entirety, and that the motion was improper, unlawful, and contrary to law. This motion was also set for March 23, 1998.
Following a hearing on both motions, the trial court denied Green’s motion to release the seized money, finding that she failed to present notice of her claim in conformity with La.R.S. 40:2610. A judgment was rendered in this matter on May 13, 1998. This appeal by Green followed.
ISSUES
Green raises two assignments of error on appeal. First, she argues that |4the trial court erred in dismissing her Motion to Release Seized Property because the State failed to timely institute forfeiture proceedings pursuant to La.R.S. 40:2608(1). Green also claims that the trial court erred in granting the State’s motion to reopen the evidence in the matter. However, she failed to brief this last assignment and is deemed to have abandoned it on appeal. Uniform Rules— Courts of Appeal, Rule 2-12.4. Lemaire v. *861 Estate of Harrington, 97-256 (La.App. 3 Cir. 10/8/97); 701 So.2d 484, writ denied, 98-0011 (La.2/20/98); 709 So.2d 785.
STANDARD OF REVIEW
When an appellate court is reviewing findings of fact, the manifest error standard of review applies. Rosell v. ESCO, 549 So.2d 840 (La.1989).
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error on clear "wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-5 (citations omitted).
NOTICE OF CLAIM UNDER FORFEITURE LAW
La.R.S. 40:2610 sets out the procedure to be used by a person filing a claim in response to a Notice of Pending Forfeiture. In Wright v. Bryant, 94-579, p. 2 (La.App. 3 Cir. 12/7/94); 647 So.2d 625, 626-7, writ denied, 95-0054 (La.3/10/95); 650 So.2d 1179, the court described this statute:
LSA-R.S. 40:2610 governs the filing of claims under the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989. As such, it prescribes the proper parties, form, and time for claims to be made. The statute specifically provides that “the claim shall be mailed to the seizing agency and to the district attorney by certified mail, return receipt requested, within thirty days after the Notice of Pending Forfeiture”. In addition, the statute provides that no extension of time shall be granted for the filing of a claim.
In denying Green's motion, the trial court held that she failed to timely provide notice of her claim to the seized money as required by La.R.S. 40:2610. In so holding, the trial court discounted the evidence that she sent a copy of her motion by certified mail, return receipt requested, to the district attorney’s office and Metro Narcotics. This is a finding of fact which we will not reverse in the absence of manifest error.
Attached to the Motion and Order to Show Cause and Clarification is an affidavit by Green, which is entitled “Claim.” This affidavit complies with the requirements of La.R.S. 40:2610(B). The crucial issue was whether Green sent a copy of this claim to the district attorney’s office and Metro Narcotics by certified mail, return receipt requested, within thirty days after she was served with the Notice of Pending Forfeiture, per La.R.S. 40:2610(A). The trial court held that she did not. A review of the record reveals that this finding is reasonably supported by the record.
At the second hearing on February 6, 1998, Green testified that she mailed a copy of her motion and claim to the district attorney’s office and Metro Narcotics by certified mail, return receipt requested, after filing a copy with the clerk of court. In support of her claim, she introduced the two green cards she received | ¿which verified that the documents she mailed had been received. Both cards exhibit a stamped delivery date of July 2, 1997. The card sent to the district attorney’s office was signed for by Susie Debevec, and the one sent to Metro Narcotics was signed for by Autumn Edens. Both Debe- *862 vec and Edens testified at the hearing that they were employed by the district attorney’s office and Metro Narcotics, respectively, and that their signatures appeared on the green cards. Edens identified the signature on the card addressed to Metro Narcotics as her signature. Debevec was not asked to identify the signature on the card addressed to the district attorney’s office as hers.
Goodwin testified that the claim was not attached to Green’s Motion and Order to Show Cause and Clarification when he received the motion. He stated that he did not receive a copy of the claim until the district attorney’s office was served with Green’s motion and claim on August 4, 1997. Goodwin testified that he never saw the green card introduced into evidence by Green until the date of the first hearing.
At the hearing on March 23, 1998, both Debevec and Edens denied that the signatures appearing on the green cards were their signatures. Debevec testified that she was on maternity leave from June 5, 1997 through August 11, 1997, and that she could not have signed the card on July 2, 1997. She stated that she was nervous about testifying at the previous hearing and did not realize until immediately following the hearing that she could not have signed the card. A copy of her doctor’s excuse, dated June 6, 1997, asking that Debevec be excused from work, was introduced into evidence. The doctor’s excuse returning Debevec to full duty, dated August 11, 1997, was also introduced into evidence. Cora Frost, secretary to the |7Rapides Parish District Attorney, testified that she is in charge of attendance records for employees of the district attorney’s office. She verified that Debevec was out on maternity leave from June 9 through August 11,1997.
Edens testified that the signature on the card addressed to Metro Narcotics was not her signature. She stated that she was nervous and scared about testifying at the previous hearing, and did not realize it was not her signature until she examined the card more closely. She stated that she did not write her “S” or “mn” the same way they appeared in the signature on the card. Edens stated that she was the only person responsible for picking up Metro Narcotics’s mail on July 2,1997. She stated that Metro Narcotics’ mail is not delivered to the address shown on- the green card, instead, she picks it up from the post office every day. If she had signed for the certified mail, she would have done so at the post office, and not at the 801 Murray Street address shown on the green card. Robert Foley, an expert in forensic document examination for the State, compared the green card bearing Edens’ signature and writing samples done by her. After doing so, he felt it was probable that the person who signed the writing samples did not sign the signature on the green card.
Marty Thiels, a letter carrier for the United States Postal Service, testified that his postal route encompasses the downtown area of Alexandria, including the courthouse. He stated that he was on duty on July 2, 1997, and would have delivered the certified letters sent by Green to the district attorney’s office and Metro Narcotics. However, he testified that he did not deliver the two certified letters from which the green cards, or 381 l’s, were taken, explaining that he does not stamp the date on the cards accompanying certified mail because he does not carry a stamp |son his route. Instead, he stated that he writes the date in by hand. Thiels further testified that he would have remembered delivering the certified mail to the address listed for Metro Narcotics because 801 Murray Street is a non-existent address. If he had delivered that letter, he stated he would have recognized Metro Narcotics and delivered it to the proper address. Thiels further testified that he is accountable for all of the certified mail he delivers; he signs for them every morning and reports the number delivered upon completing his route.
Ruth Wilson, an information clerk, claims and inquiry, at the South Park Sta *863 tion Post Office, testified that she researched the article numbers on the two green cards introduced into evidence by Green. She stated that the 3849’s, or yellow cards, are the carrier’s receipt for delivered certified mail, and are filed into her records after the carrier turns them in following delivery. In this instance, Wilson stated that she was unable to locate the corresponding 3849’s to either of the green cards to show that they had been delivered. Additionally, Wilson testified that the cancellation lines located on the front of the green cards did not appear to be normal cancellation marks. She stated that the green cards normally would not have been canceled because they are attached to letters which are canceled. If they do go through the cancellation machine, Wilson testified that the cards would usually have the date stamped on them in addition to the cancellation lines. She described the cancellation lines on the two green cards as merely black lines. Wilson also stated that the green cards are usually initialed and dated by the carrier who delivers them, unlike these cards, since carriers do not carry stamps on their routes.
|9Claude Weatherford, a detective with the Rapides Parish Sheriffs Office, testified that he conducted an investigation into the involvement of Laurice Sykes with respect to this civil forfeiture proceeding. He stated that Sykes informed him that she was asked by Demetri Brown to discover the name of the employee who accepted Metro Narcotics’ mail. After learning that Debevec did so, Sykes told Weatherford that she contacted Brown and gave him this information. Weather-ford testified that Sykes pinpointed the inquiry into Debevec’s name to January 29th or 30th of 1998. Sykes also reported that she observed Brown’s sister-in-law practice signing Debevec’s name when she went to an audio store partly owned by him. She said that this occurred after January 30, 1998. Sykes did not testify at the hearing. It was stipulated that she would assert her fifth amendment privilege to any questions asked by either party-
Green testified that she was assisted in filing her initial motion and claim by Brown, who also helped her mail the letters to the district attorney’s office and Metro Narcotics. She did not remember attaching the green cards to the letters she sent, nor did she remember paying postage to send the letters by certified mail, return receipt requested. Green testified that she did not pay any money to mail the letters since she placed them in the mail boxes located outside the post office. She further stated that the green cards were never mailed back to her address, and that she did not see them again until the hearing in this matter.
Brown testified that he assisted Green in filing her motion and claim with the clerk of court, and helped her mail them to the district attorney’s office and Metro Narcotics. He stated that they filled out the envelopes and the white card | requesting the letters be sent certified and gave them to the postal clerk, who stamped them and charged Green for the certified mail. When Green received the green cards back in the mail, Brown testified that he told her to make copies of them and to file a copy with the clerk. After making the copies, Brown testified that he gave the green cards to Green’s attorney. Brown testified that he neither stamped the delivery date on the cards, nor signed Debevec’s or Edens’ signatures on them.
After reviewing the record in this matter, we find that the trial court was clearly presented with two differing views of the evidence. Its decision to discredit Green’s evidence and to credit the view that she failed to mail her claim to the district attorney’s office and Metro Narcotics by certified mail, return receipt requested, within thirty days of her receipt of the Notice of Pending Forfeiture, was based on a credibility determination, and is a finding of fact which demands great defer *864 ence. Accordingly, we find that the trial court was correct in dismissing Green’s Motion to Release Seized Property. This assignment of error is dismissed for lack of merit.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this matter are assessed to the defendant-appellant, Joyce Green.
AFFIRMED.